Let's begin with Go New York Tours v. Big Bus Tours, No. 20-1022CB. Good morning, Your Honor. This is Maurice Ross for the appellant Go New York Tours. May it please the court, this is a case that involves whether or not the pleading satisfies the plausibility requirements for pleading an antitrust case. We respectfully submit that the district court imposed a probability requirement rather than a plausibility requirement. And in particular, we acknowledge that in a case that alleges a restraint of trade under Section 1 of the Sherman Act, parallel conduct is not enough. But the district court ignored quite a few plus factors that were set forth in the second amended complaint. First of all, one of the most important plus factors in any such action is the motivation. And the second amended complaint set forth in great detail why the two alleged conspirators had a motivation to conspire to exclude Go New York from the attraction pass market. And in particular, Go New York was an upstart startup company that was acquiring increasing amounts of market share in the New York market. And the exclusion of Go New York from the attraction pass was the way in which the two competitors in the market preserved market share and were able to preserve their cost structure, whereas Go New York was offering its products at a lower cost. Second of all, the district court ignored that there was no rational reason for multiple attractions, tourist attractions in New York City not to want to do business with Go New York. Go New York was increasing its market share and would have provided increased business for all of the attractions. And indeed, Go New York had even offered to forego its share of commissions in order to simply add the attraction to its attraction passes, but was told by the attraction that they would not be permitted to do so. The third plus factor, and this is very important, the district court ignored that the second amended complaint actually alleged a pattern of collaboration between the two defendants. In particular, there were certain attractions such as the One World Trade Center, in which the attractions had exclusive arrangements with one of the defendants. In the case of the One World Trade Center, it was exclusive with Gray Line. And yet, the One World Trade Center and Gray Line allowed Big Bus to include that attraction in its multi-pass. The same was true for the Empire State Building. There had to be coordination and cooperation between the two defendants in that situation. And they also had to be coordinating in the decision to exclude Go New York. So the amended complaint alleged actual coordination and cooperation. And in this market, this is a market in which everybody knew each other. They knew each other very well. And that could only have happened if there was substantial coordination. In addition, your honors, there was a pattern across multiple attractions in which each attraction would refuse to do business with Go New York. And we're told that if we did otherwise, we would make our other trade partners unhappy. Our other trade partners might refuse to do business with us. We were told that do not do business with Go New York. And that came from Gray Line and Big Bus. And it's impossible to believe that that pattern did not involve some coordination between Gray Line and Big Bus. Finally, the two defendants disparaged Go New York repeatedly using the same disparaging remarks in the complaint reports about what these are. Now, in this market, where you have all of the major tourist attractions in New York, many of them refuse to do business with Go New York. It's impossible. I think it's highly implausible that there was not a conspiracy. It just wouldn't have happened otherwise in this highly integrated market. So with that, your honors, I will answer any questions. Thank you very much, Judge Park. Yes, thank you. Counsel, I think you said a couple of times that there had to be coordination. And I guess I was wondering if you could spell that out a little bit, and I'd like to push on it a little bit. What specifically is the proof of coordination that you allege? What we allege is that this is a very small market. There are only a few competitors. And the pattern of statements by these attractions as to why they would not do business with Go New York. There are several of these attractions, for example, One World Trade Center, that the two defendants share with each other. And the defendants allowed each other to participate in those attractions to the illusion of Go New York. So they had to be cooperating. You know, understand in this market, we're talking about double-decker tour buses. They share bus stops. In order for Gray Line and Big Bus to cooperate with each other at One World Trade Center, they had to allow their So there had to be at both the street level and the executive level coordination. It's not an accident that each and every one of these attractions said that they would make their trade partners unhappy if they did business with Go New York. So it's from circumstantial evidence that you're asking us to infer that there had to be coordination. Well, yes, Your Honor. And but at the pleading stage, certainly we should be entitled to discovery as to whether or not this circumstantial evidence that at least creates the plausible likelihood that there was a conspiracy, whether that conspiracy occurred. And we think it's more than plausible. We think it's very likely that that occurred. There's really no other explanation for what happened here. Okay. Thank you. Judge Nardini. To follow up on your comment about the bus stops being shared, I don't recall seeing that in your blue brief. Can you point me to where you made that argument? Your Honor, it's not in the brief. So how can we consider it? Your Honor, I'm just trying to accentuate the image of the market that we've described where these folks deal with tourist attractions. They send their buses with tourists to these attractions and they obviously have to coordinate in having access. And I think the amended complaint clearly indicates that there has to be coordination in order to have access to these tourist attractions. The district court- Okay, but that's not an argument you made in your brief. No, Your Honor, it's not. All right. Thank you. I have no further questions. Thank you. I have no questions. So we'll turn to counsel for defendants. Good afternoon, Your Honor. Good afternoon, Your Honors. Justin Eppner from Wilson, Goodrich, and Rosati, arguing on behalf of the defendant's appellees. This case presents a very straightforward application of Twombly. One of the dispositive questions in this case is whether the plaintiff pled both consciously parallel conduct and also plus factors. Under Twombly, both are required, but neither is present in the second amended complaint. Both are required because as the plaintiff concedes, there's no direct evidence of conspiracy. The basic theory of plaintiff's case here is more or less threefold. First, there was a small handful of attractions that by balking at selling discounted tickets to the plaintiff are in fact boycotting the plaintiff. Second, they are doing this, they're boycotting specifically because defendants colluded to coerce these attractions into the boycott. Now, both of those, as the district court found on two separate occasions, are implausible. It's full of conclusory pleading and internal contradictions. But the third element, the third leg of the stool is an antitrust hook that connects admissions tickets to bus tours, that's the essential facilities doctrine, and plaintiff's argument lacks any merit. As to Twombly requiring consciously parallel conduct, I'm not aware of anywhere in the pleadings where plaintiff has identified, and certainly not today, what the consciously parallel conduct that Twombly requires could possibly be. In the antitrust context, consciously parallel conduct means, quote, identical actions within a time period suggestive of prearrangement. That's from this court's 2018 Anderson case. Not just an action, but also a time period, a time period suggestive of prearrangement. As I mentioned, the pleadings and counsel this afternoon have not identified what that just to assume for a moment that that parallel conduct is contracts between the defendants and tourist attractions. First, there's nothing identical there. These are separately negotiated contracts, and the pleadings are missing any detail about what those contracts could possibly be. Second, there's no time period associated. There's very few dates in the specific fact-based allegations in the Second Amendment complaint, and what dates there are, are across multiple years. Plus factors are also required. So that is, even if plaintiff had pled consciously parallel conduct, that alone is not enough. Twombly explains that plus factors are, quote, context that raises a suggestion of a preceding agreement, close quote. The two that plaintiff hangs its hat on, for the most part, in its pleadings are a common motive and actions against self-interest. Now, as to a common motive to conspire, plaintiff argues that the defendants had a common motive to conspire because they compete against plaintiff when upstart competitor. Well, of course. Of course, they have a common motive to compete. That's competition. The simple logic of this was rejected repeatedly in Twombly. Twombly says, quote, resistance to the upstarts, using the exact same word that plaintiff uses here, is, quote, the natural unilateral reaction of each defendant. In slightly greater detail, Twombly explains, quote, if alleging parallel decisions to resist competition were enough to imply an antitrust conspiracy, then pleading a Sherman Act Section 1 violation against almost any group of competing businesses would be a sure thing, close quote. Twombly explains that the simple logic of a common motive to conspire requires much more than just the existence of actions against self-interest. This plus factor requires that actions are against the self-interest, quote, of the alleged conspirators. That's from this court's decision in 2013 in Baltimore v. Citigroup. Plaintiff has explained over and over that it's the tourist attraction, not the defendants, that were acting against their own self-interests. Whether an attraction did something against its own self-interest says nothing about whether the defendants have colluded in some way. In any event, those pleadings are implausible and conclusory, as the district court ruled on two separate occasions. This gets to the boycott line of reasoning. It's not even clear what the relevance of the boycott line of reasoning is, because it's not about the defendant's self-interest. But plaintiff, on a handful of occasions, refers to something called a virtual boycott. This is, of course, just a handful of hundreds, perhaps thousands, of attractions in New York City. Plaintiff makes clear why those attractions wouldn't want to do business with it. Plaintiff was trying to buy discounted tickets, as it explained a number of times. Nothing to do with the commission that counsel mentioned, but over and over plaintiff explains they were seeking discounted tickets. Now, these are world-famous tourist attractions. It makes perfect sense that these attractions would hesitate to give discounted tickets to a self-proclaimed upstart. At best, plaintiff has pled simple distribution contracts between a supplier, meaning the attractions in this case, and a distributor. Decades of Supreme Court antitrust precedent, dating back to Continental TV in 1977, explain that these are normal and good for competition. Now, the hook that ties this together, that ties together, on the one hand, the admissions tickets, and on the other hand, bus tours, is what plaintiff calls the essential facilities doctrine. The Trimco case from the Supreme Court in 2004 cast doubt on whether the essential facilities doctrine is good law in the first place. However, in 1990, this court, in the Twin Labs case, explained what it takes to plead an essential facilities doctrine case. Quote, control of the essential facility by a monopolist, and also that denying that essential facility poses, quote, a severe handicap on the plaintiff. First, as to the essential problem, there's nothing essential here. There are lots of ways to market bus tours other than a multi-attraction pass. Pages 57 and 58 of the appendix make this especially clear, where plaintiff's listed four separate ways, including the primary means, uniform sales representatives, but a host of other ways that they market and sell their tickets online, at their offices, at visitor centers, at hotel concierge desks, et cetera. Second, the essential facilities doctrine requires a monopolist, but there is no monopolist here, as the district court explained. There's two separate groups of defendants. Finally, a severe handicap. Plaintiff has pled repeatedly that there is no severe handicap here. As counsel mentioned just a moment ago, and as is made clear on pages 62 and 69, in particular, of the appendix, the plaintiff, Go New York, has been wildly successful in growing its business. This case simply cannot survive without an essential facilities claim to tie it together. So, in sum, plaintiff needs a trifecta here. The tourist attractions are boycotting it. The boycott is because of some sort of collusion between the defendants, and these bundled ticket packages are somehow essential to compete in the bus tourist market. We have a simple application of Twombly here. Dismissal is warranted because plaintiff, quote, mentioned no specific time, place, or person involved in the alleged conspiracies. Thank you. Thank you very much. Judge Park, any questions? Yeah. Counsel, what kind of allegations would the plaintiff need to include if they don't have, or could they conclude if they don't have direct evidence of the conspiracy? It sounded like you were saying that they sort of need to have a whistleblower or some kind of allegations about a meeting or people having a conversation or something along those lines, and I thought it was enough to have circumstantial evidence, and the question would be if it's plausible that given what they're seeing the attractions do and the competitors do, that might be enough. You know, you're exactly right. Circumstantial evidence absolutely can be sufficient. The case law explains that it requires both parallel conduct and also plus factors to be able to infer a conspiracy. So, as counsel mentioned earlier this afternoon, for example, they are kind of out and about in the marketplace seeing what else takes place. The second amended complaint, like the prior complaints before it, just simply has none of the detail that that would require to be able to infer. The simple logic of plaintiff's case makes it clear why there could not have been collusion. Plaintiff explains a number of times that the two defendant groups are both kind of the big guys, both global players operating all over the world. Assuming that's true, and we have no reason to doubt that, but assuming that's true, there's no reason for the plaintiffs to collude with each other to convince a tourist attraction to not do business with it. So, at the very most, we have a situation where there's a vertical arrangement between one of the defendants and the tourist attraction, because there's simply no way of making the why the defendants would need to collude with each other to accomplish this. It just violates the internal logic of what plaintiff has plotted. Thank you. Judge Nardini. Thank you. I have no questions. And I have no questions. Has counsel for appellant retained some time? Madam Clerk? Yes, Judge. He has two minutes. Fine. Thank you. I don't have that information available, so I'll ask you. Mr. Ross? Counsel for Go New York? Hi, this is Maurice Ross, counsel for Go New York. This argument highlights the fact that we have a case in which circumstantial evidence could plausibly lead to an inference of a conspiracy and restraint of trade. What I hear from my learned opponent is many questions of material fact that should be the subject of your allegations that the defendant is making about discounted tickets. There are allegations that are being made about the intent of the parties. It seems to me that there's a host of plus factors played in this second amended complaint that could lead to a plausible theory that there must have been at least two circumstantial evidence of conspiracy. I would also point out that it's not as though the complaint is back in dates or references to specific agreements. For example, we refer to a specific agreement with the Intrepid, which is one of the tourist attractions, and after Go New York entered into that agreement, the Intrepid backed out of the agreement telling Go New York that its trade partners had both informed it that they could not work with Go New York. I think that alone provides at least powerful circumstantial evidence that there's something going on here. There's a restraint of trade that involves collaboration between the two big players in the market. All right. Thank you very much. Absent any further questions from my colleagues, we'll reserve the decision and we'll